IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

WILLIOUS EUGENE BLOCK                                                                    PLAINTIFF

v.                          Civil No. 4:18-cv-04103

PRESTON GLENN, Administrator, Nevada County
Detention Center ("NCDC"); JAILER ASHLEY ISLEY;
SUPERVISOR KAREN GHORLEY; JAILER
TOMMY MILLER; JAILER MIKE DAVIS;
JAILER ASHLEY TURNER; JANE AND JOHN
DOE MEDICAL STAFF MEMBERS                                                  DEFENDANTS

## MEMORANDUM OPINION

Before the Court is the Motion for Summary Judgment and Supplemental Motion for Summary Judgment of Separate Defendants Preston Glenn, Ashley Isley, Karen Ghorley, Tommy Miller, Mike Davis, and Ashley Turner. (ECF Nos. 17, 25). An Affidavit was filed in support of Defendants' Motion on June 11, 2019. (ECF No. 33). Plaintiff has not responded and his time to do so has passed.[1] The Court finds this matter ripe for consideration.

### I. BACKGROUND

On April 30, 2018, Plaintiff fell while he was housed at the Nevada County Detention Center ("the Detention Center"). (ECF No. 1). According to Plaintiff, the Detention Center staff

---

[1] An order was entered on February 19, 2019, directing Plaintiff to respond to the Motion by March 12, 2019. (ECF No. 21). Another order was entered on May 20, 2019, directing Plaintiff to respond to the Supplemental Motion. (ECF No. 29). Plaintiff has not filed a response to either motion and has not requested an extension of time to respond. Furthermore, no mail has been returned as undeliverable. Plaintiff was advised that failure to comply with the Court's order to respond to the motion would result, in relevant part, in all of the facts set forth by Defendants in the summary judgment papers being deemed admitted, pursuant to Local Rule 56.1(c). That being said, the Court must consider the facts set forth in Plaintiff's verified complaint in ruling on the instant motions as a verified complaint is the equivalent of an affidavit for summary judgment purposes. *See, e.g., Roberson v. Hayti Police Dep't.*, 241 F.3d 992, 994-95 (8th Cir. 2001). As the Court in *Roberson* stated, "[a]lthough a party may not generally rest on his pleadings to create a fact issue sufficient to survive summary judgment, the facts alleged in a verified complaint need not be repeated in a responsive affidavit to survive the summary judgment motion." *Id.* Accordingly, the Court will "piece[] together [Plaintiff's] version of the facts from the verified complaint[.] Those portions of the Defendant[s'] statement of material facts that do not conflict with [Plaintiff's verified complaint] are deemed admitted." *McClanahan v. Young*, No. 4:13-cv-04140, 2016 WL 520983, at *1 (D.S.D. Feb. 5, 2016).

found him laying in a puddle of water. *Id.* Plaintiff states that Separate Defendants Mike Davis and Tommy Miller were instructed by Separate Defendant Karen Ghorley not to move or touch him and to let him try to get up on his own. *Id*. Plaintiff states the jailers instead grabbed his arms and pulled him to a sitting position "as [he] expressed pain." *Id*. Plaintiff states that the jailers then continued to pull him to his feet, causing more pain in his lower back and spine "[a]nd possibl[y] caus[ing] more injury to both back and knee." *Id*.

Plaintiff states that after the fall, he requested medical treatment and attention from Defendants. *Id*. Plaintiff asked other inmates to push a button to reach jailers, but the jailers did not answer. *Id*. Plaintiff states that he requested to go to the ER several times and that he requested medication to ease his pain, "[b]ut neither staff member came back to the barracks to assist me." *Id*. Plaintiff states that Separate Defendant Miller stated "[w]e had an insane emergency up front and was to [sic] busy." *Id*. Plaintiff further states that he continued "to beg and cry for, over 24 hours of cruel pain and suffering which continued on for many day[s] afterward." *Id*.

Defendants state that when they found Plaintiff laying in a puddle of water after his fall, Plaintiff was asked if he needed EMS and he informed them that he did not. (ECF Nos. 28, 33). Defendants further state that Plaintiff ultimately asked for assistance standing up and getting into bed. *Id*. The Affidavit of Separate Defendant Karen Ghorley states that "[a]t no point did any individual attempt to force [Plaintiff] to stand, causing him any sort of pain, nor did any Jailer willfully ignore any requests for help made by [Plaintiff]." (ECF No. 33). Defendants also state that "[a]t the approximate time of this incident, another detainee at the Detention Center attempted suicide, and the response to this superseded any non-emergency medical need." (ECF Nos. 28, 33).

Plaintiff saw the Detention Center's doctor the next day, on May 1, 2018. (ECF Nos. 28, 33). After this visit, Plaintiff continued to make complaints to jail administration, and was

informed by Separate Defendant Administrator Preston Glenn that he would need to fill out a medical request form in order to see the doctor. *Id*. The Plaintiff did not fill out a medical request form until May 15, 2018. *Id*.

Plaintiff was thereafter taken to Wadley Regional Medical Center in Hope, Arkansas, on May 15, 2018, where it was determined that he was suffering from a back sprain—a pulled muscle in his back. (ECF Nos. 28, 33). Wadley Regional discharged Plaintiff the same day with no prescription medications or care instructions. His discharge notes included information on stretches to relieve pain, and information on using acetaminophen or ibuprofen when needed. *Id*. When Plaintiff filed his final medical request on May 22, 2018, asking for a specialist to look at his back, Plaintiff was informed that the Detention Center was following doctor's orders. (ECF Nos. 28, 33).

The Detention Center handbook states that "[a]ll perceived emergency medical situations shall receive immediate attention. Emergency medical situations will have priority over routine Detention Facility operations until the emergency is resolved." (ECF Nos. 28, 33). A medical emergency includes "[a]ny perceived life or health threatening condition" including, *inter alia*, severe bleeding, unconsciousness, head injury, severe pain, suicide attempt, or severe burns. *Id*. In an emergency situation, dispatch is to be notified immediately, and EMS is to transport a detainee to the hospital. *Id*.

The jailer discovering an emergency situation is to complete an incident report and record the incident in the jail log and detainee records. (ECF Nos. 28, 33). Detention Center staff is to strictly comply with doctor's orders upon returning the detainee to the facility. *Id.* As for non-emergency medical needs, the Detention Center offers routine sick call. *Id*. A detainee must make a written sick call request stating the nature of the problem, and the jail administrator makes arrangements for the detainee to be transported. *Id*. Further, "[a]ll sick call requests, the result of

all appointments and examinations, prescribed medications, receipts for medications administered, or any information pertaining to health care are placed in the detainee's medical record." (ECF Nos. 28, 33).

Plaintiff filed his *pro se* Complaint on June 29, 2018, pursuant to 42 U.S.C. § 1983. (ECF No. 1). Plaintiff's application to proceed *in forma pauperis* was granted on the same day. (ECF No. 3). Plaintiff sues Defendants in both their individual and official capacities. Plaintiff asserts claims for excessive force, denial of medical care, and denial of due process of the law. Plaintiff seeks compensatory and punitive damages. (ECF No. 3).

Defendants filed the instant Motion for Summary Judgment on February 14, 2019. (ECF No. 17). The Supplemental Motion for Summary Judgment was filed on May 20, 2019. (ECF No. 25). Defendants' original motion asserts that they are entitled to summary judgment with respect to Plaintiff's claim of denial of medical care. Specifically, Defendants argue that Plaintiff did not suffer from a serious medical need and, further, argue that Defendants were not deliberately indifferent to any of Plaintiff's medical needs. Alternatively, Defendants argue that they are entitled to qualified immunity with respect to Plaintiff's medical care claim. Defendants also argue that Plaintiff cannot demonstrate that his alleged injuries resulted from a policy or custom in place at the Detention Center and that, therefore, his official capacity claims fail. (ECF No. 17). In the supplemental motion, Defendants assert they are entitled to summary judgement with respect to Plaintiff's claims for excessive force and due process violations. Defendants also argue that they are entitled to qualified immunity with respect to these claims. (ECF No. 25).

## II.  LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. DISCUSSION

The Court will first address Plaintiff's excessive force claim, then turn to Plaintiff's claims for denial of medical care and due process violations. Finally, the Court will discuss Plaintiff's official capacity claims.

**A. Excessive Force**

"Whenever prison officials stand accused of using excessive physical force in violation of the Eighth Amendment, the 'core judicial inquiry' is whether the force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Jones v. Shields*, 207 F.3d 491, 495 (8th Cir. 2000) (citing *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)). "Because the use of force is sometimes required in prison settings, guards are liable only if they

are completely unjustified in using force, i.e., they are using it maliciously and sadistically." *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008). Relevant factors to be considered for this inquiry include: "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, . . . any efforts made to temper the severity of a forceful response," and the extent of injury to the inmate. *Hudson*, 503 U.S. at 7 (internal quotations omitted).

"Not every malevolent touch by a prison guard gives rise to a federal cause of action." *Jones*, 207 F.3d at 495. Even with malicious motivation, "not every push or shove violates the Constitution, but any use of force greater than *de minimis*, or any use of force that is 'repugnant to the conscience of mankind,' does." *Irving*, 519 F.3d at 446 (citing *Hudson*, 503 U.S. at 9-10). While significant injury is not required, "some actual injury must be shown" and the extent of inflicted pain considered. *Jones*, 207 F.3d at 495. "An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010). "[U]nless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain . . . the case should not go to the jury." *Johnson v. Bi-State J. Ctr./Ark. Dep't. of Corr.*, 12 F.3d 133, 136 (8th Cir. 1993).

In the present case, Plaintiff alleges that Defendants used excessive force when they "grabbed his arms and pulled [him] to sit position as [he] expressed pain." (ECF No. 1). Plaintiff continues that "[b]oth jailor[s] continue[d] to pull [him] to [his] feet" and that it "caused more pain in [his] lower back and spine" and "possibl[y] cause[d] more injury to both back & knee." (ECF No. 1). However, the undisputed facts indicate that the "force" of helping Plaintiff to his feet after falling was applied in a good faith effort to assist him after he fell. Likewise, the undisputed facts

6

show that Plaintiff suffered no actual injury due to this "force." Accordingly, Defendants are entitled to summary judgment for Plaintiff's individual capacity excessive force claims.

**B. Denial of Medical Care and Alleged Due Process Violations**

In both the second and fourth claims of Plaintiff's Complaint, he asserts that Defendants' denied him appropriate medical care. Specifically, in the second claim, Plaintiff states that after his fall, he requested medical attention or treatment from Defendants. (ECF No. 1 at 5). Plaintiff states that he asked other inmates to push the call button to reach a jailer, but that Detention Center staff would not answer. *Id*. He further states that he asked to go to the ER several times to receive medication to ease the pain. Plaintiff states that the staff eventually stated that the delay was due to an "insane emergency up front" which demanded the staff's attention. *Id*.

Plaintiff's fourth claim states that his due process rights were violated when the Defendants "fail[ed] to assess the accident according to policy" and failed to "follow protocol, etiquette that would have resolved the situation," ultimately causing medical care to be delayed or denied. (ECF No. 1 at 23). Plaintiff asserts that Defendants did not assess his injuries and that he "was left in the room over 24 hours without any attention when everyone on staff were repeatedly inform[ed] of the slip and fall" and that he "was just left to deal with it the best [he] could." *Id.* at 23-24.

Because Plaintiff was a pretrial detainee at the time of the events in question, Plaintiff's claims for denial of medical care are properly analyzed under the Due Process Clause of the Fourteenth Amendment. *Carpenter v. Gage*, 686 F.3d 644, 650 (8th Cir. 2012). However, "the due process analysis applicable in this situation parallels that under the Eighth Amendment, because pretrial detainees are entitled to the same protection as imprisoned convicts."[2] *Id*. (citing *Davis v. Or. Cnty., Mo.*, 607 F.3d 543, 548 (8th Cir. 2010)). Accordingly, to prevail, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The deliberate indifference standard includes "both an objective

---

[2] Thus, the standard governing Plaintiff's second and fourth claims is the same and the Court's analysis will apply to both claims.

and a subjective component: '[Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show he suffered from an objectively serious medical need, Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted). Intentionally denying or delaying access to medical care may constitute deliberate indifference. *See Estelle*, 429 U.S. at 104-05; *Dulany*, 132 F.3d at 1239. "When the inmate alleges that a delay in medical treatment rises to the level of an Eighth Amendment violation, the objective seriousness of the deprivation should also be measured by reference to the *effect* of delay in treatment." *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005) (cleaned up). "To establish this effect, the inmate 'must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment[.]'" *Id.* (quoting *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997)).

To establish the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008) (cleaned up). A plaintiff must show that an official "actually knew of but deliberately disregarded his serious medical need." *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006). Whether an inmate's condition is a serious medical need and whether an official was deliberately indifferent to the inmate's serious medical need are questions of fact. *Schaub*, 638 F.3d at 915 (8th Cir. 2011) (citing *Coleman v. Rahija*, 114 F.3d 778, 785 (8th Cir. 1997)).

Because the undisputed facts clearly indicate that Plaintiff did not suffer from a serious

medical need, Plaintiff's claims for denial of medical care fail. Although Plaintiff states that he repeatedly asked to see a doctor, Defendants' proof shows that Plaintiff did not fill out a request to see a doctor until May 15—the same day he was transported to the emergency room. Defendants' proof also shows that Plaintiff was then diagnosed with a back sprain, with prescribed treatment being only stretches and ibuprofen. There is simply no proof that Plaintiff's condition was a serious medical need. Furthermore, there is no proof that any delay in treatment caused any negative effect to Plaintiff's condition.

For these reasons, Defendants are entitled to summary judgment with respect to Plaintiff's individual capacity claims for denial of medical care and due process violations.[3]

**C. Official Capacity Claims**

As previously stated, Plaintiff has also sued Defendants in their official capacities. Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, Plaintiff's official capacity claims against Defendants are treated as claims against Nevada County, Arkansas. *See Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010). "[I]t is well established that a municipality cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish any liability on the part of Nevada County under section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted).

Plaintiff fails to allege that any policy, custom, or practice of Nevada County caused the alleged violation of his constitutional rights, instead asserting that Defendants failed to follow

---

[3] Having found that the facts do not make out a constitutional violation with respect to any of Plaintiff's claims, there is no need to reach the issue of qualified immunity. *See Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009).

county policies that would have prevented the alleged constitutional violations. (ECF No. 1 at 5-7). For that reason, summary judgment should be granted with respect to all official capacity claims.

## IV. CONCLUSION

For the reasons set forth above, Defendants Motion for Summary Judgment (ECF No. 17) and Supplemental Motion for Summary Judgment (ECF No. 25) should be and hereby are **GRANTED**. Accordingly, this matter is **DISMISSED WITH PREJUDICE**. A judgment consistent with this opinion shall issue.

**IT IS SO ORDERED**, this 2nd day of July, 2019.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge